IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DEC 11 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

PAUL CURTIS LEGGETT,           §
aka PAUL CURTIS LEGETT,        §
                               §
          Petitioner,          §
                               §
v.                             §          No. 4:14-CV-233-A
                               §
WILLIAM STEPHENS, Director,    §
Texas Department of Criminal   §
Justice, Correctional          §
Institutions Division,         §
                               §
          Respondent.          §

## MEMORANDUM OPINION
### and
### ORDER

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Paul Curtis Leggett, aka Paul Curtis Legett, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ) against William Stephens, Director of TDCJ, respondent.

After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

## I. Factual and Procedural History

On April 13, 2012, in the Criminal District Court Number Two of Tarrant County, Texas, petitioner entered a negotiated guilty plea to murder in exchange for a recommended thirty-eight year

sentence, and the trial court assessed his punishment accordingly. Adm. R., Writ WR-79,765-01, 79-86, ECF No. 15-2. Six days later, on April 19, a nunc pro tunc order was signed by the trial court amending the judgment to include a deadly weapon finding. *Id.* 88. Petitioner did not directly appeal his conviction or sentence but did file a state habeas application, raising one or more of the claims presented in this federal petition, which was denied by the Texas Court of Criminal Appeals without a hearing on the findings of the trial court. *Id.* at cover. This federal petition followed.

## II. Issues

Generally, petitioner raises four grounds in his federal petition:

(1) Ineffective assistance of counsel;
(2) Involuntary guilty plea;
(3) Breach of the plea agreement; and
(4) Validity of the prior conviction used for enhancement.

Pet. at 3-4 & Attachs., ECF Nos. 1, 1-1 & 1-2.[1]

## III. Rule 5 Statement

Respondent believes the petition is neither time-barred nor subject to the successive-petition bar, however he believes one

---

[1]The pagination in the ECF header is used when referencing the petition and attachments.

2

or more of petitioner's claims are unexhausted and procedurally
barred, *see infra*.  Resp't's Answer 5-11, ECF No. 1.

## IV.  Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf
of a person in custody pursuant to the judgment of a state court
shall not be granted with respect to any claim that was
adjudicated on the merits in state court proceedings unless he
shows that the prior adjudication:  (1) resulted in a decision
that was contrary to, or involved an unreasonable application of,
clearly established federal law, or (2) resulted in a decision
that was based on an unreasonable determination of the facts in
light of the evidence presented in the state court.  28 U.S.C. §
2254(d).  A decision is contrary to clearly established federal
law if the state court arrives at a conclusion opposite to that
reached by the United States Supreme Court on a question of law
or if the state court decides a case differently than the Supreme
Court has on a set of materially indistinguishable facts.
*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  A state court
decision will be an unreasonable application of clearly
established federal law if it correctly identifies the applicable
rule but applies it unreasonably to the facts of the case.  *Id.*

at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings.  Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.  The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  When the Texas Court of Criminal Appeals denies a federal claim in a state habeas corpus application without written order, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."  *Johnson v. Williams,* 133 S. Ct. 1088, 1094 (2013) (quoting *Harrington v. Richter,* 562 U.S. 86, 98-99 (2011)).

### *Voluntariness of the Plea*

Under his second ground, petitioner claims that his guilty plea was involuntary and that he would not have entered the plea if the prosecutor and his court-appointed attorney, psychiatrist and investigator "had not threatened a life sentence."  Pet. 3, ECF No. 1.  He further claims that the state's "bad faith" delay created "anxiety in the mind of the applicant so he would feel compelled to accept an unfavorable plea bargain to avoid the

4

threat" of a life sentence.   *Id.*   The state-habeas court

conducted a hearing via affidavit.   In a lengthy affidavit,

petitioner's court-appointed counsel, Ray Hall Jr., responded to

the issues as follows:

> I was appointed to represent Mr. Paul Leggett on
> August 16, 2011 . . . . . I was the 2nd attorney to
> represent Mr. Leggett.   Mr. Paul Leggett was not denied
> ineffective assistance of counsel.   On September 16,
> 2011, I filed a Motion for Appointment of Investigator
> on his behalf.   Mr. Stan Keeton of Wells Investigations
> was appointed on that date.   I met with Mr. Leggett
> several times on this case in the Tarrant County jail
> as well as in the holdover cell at each court setting.
> I thoroughly reviewed the District Attorney's case
> file.   In fact, I reviewed the file several times in
> order to discuss the case with the investigator and
> determine what needed to be done on Mr. Leggett's
> behalf.   I instructed the investigator to visit with
> Mr. Leggett (in jail) to see if he was able to obtain
> any additional information that would be helpful to his
> case.   During one visit with Mr. Leggett, I reviewed
> and discussed the entire file with him.   Mr. Leggett
> told me his version of the events, including his claim
> of self-defense.   I told Mr. Leggett several times that
> his version of the events did not support a self-
> defense claim.   I also told Mr. Leggett that I could
> not find anything in the report to verify a large
> portion of this version of the events.   I informed him
> that my investigator and myself had already spoken with
> one of the potential witnesses and we were going to the
> location of where the incident occurred in an attempt
> to locate ay other potential witnesses.   The
> investigator and myself spoke with his friend, Shirley
> Thompson, that Mr. Leggett lived with at the time of
> the incident several times.   We scheduled a date and
> time for her to meet with us at the scene of the
> alleged crime in order to show us what she remembered
> and assist us in locating potential witnesses.   The
> investigator and myself traveled to the location and

surveyed the area.  We compared the area to the photos
of the scene that were provided to me by the Assistant
District Attorney, Amy Collum.  We also took our own
photographs of the location to determine exactly where
the incident occurred in an attempt to piece everything
together.  Ms. Shirley Thompson never arrived at the
scheduled meeting place.  We telephone[d] her and she
stated that she was in route to the location.  We
proceeded to knock on doors in an attempt to locate
possible witnesses while we were waiting for her to
arrive.  She has previously stated that some of the
possible witnesses may have relocated to other trailers
so we were attempting to obtain their new addresses.
Although the vehicles that she told us the possible
witnesses drove were in the driveway and the lights
were on in the trailers, no one would answer the door.
We were finally able to speak with a neighbor across
the street.  She gave us the information that she had
heard along with a list of possible people that she
thought might have some information.  She also told us
that the people we were trying to speak with should be
home because their vehicles were in the driveway.  We
went back to the same trailers and knocked again, but
no one would answer their doors.  Ms. Shirley Thompson
still had not arrived so we tried to call her again.
She did not answer her phone.  We decided to go to some
of the addresses of other possible witnesses that were
in the area.  Once again there were cars in the
driveways, but no one would answer their doors.  At one
of the trailers, the hood of the vehicle was still warm
and a light was on in the small trailer.  However, no
one would answer the door.  We were not sure if
everyone had found out who we were and why we were
there, but we were unable to get anyone to speak with
us.  We went back to the area where the incident
occurred to see if Ms. Shirley Thompson had arrived.
She was not there, so we tried to contact her by
telephone again.  She stated that she had a doctor's
appointment and was unable to meet with us.  We asked
her why she agreed to meet with us knowing that she had
a doctor's appointment.  She stated that she did not
know why she didn't tell us that information, but
agreed to meet with us on another day.  We attempted to

contact her by telephone on numerous occasions, but she would not answer the telephone. I told Mr. Leggett about this particular situation and he could not explain why she was reluctant to speak with us. He further stated that she had stopped coming to visit him in jail. At that time, Mr. Leggett's version of the events started becoming more elaborate and he attempted to turn the defense of his case into a conspiracy. He stated that the victim was an informant for the police department or drug task force. I asked Mr. Leggett why that information would affect his case. He stated that it was all a "set up". I become [sic] concerned with his answers to my questions. Therefore, I filed an Ex Parte Motion for a psychiatric exam to be performed by Dr. Kelly Goodness. Judge Wayne Salvant granted my motion. Dr. Goodness met with my client. Upon the completion of the psychiatric interview, Dr. Goodness contacted my by telephone to discuss her findings. She stated that my client was competent to stand trial and she did not believe that he had any mental illness or disorder. Dr. Goodness stated that Mr. Leggett discussed the case and believed everything he was saying. She also informed me that Mr. Leggett stated that he would be open to a plea as long as it was reasonable. He stated that he would like to meet with his attorney regarding that matter. Dr. Goodness stated that she had a very good rapport with Mr. Leggett and asked him if he would like for her to accompany him when he spoke with me about a possible plea bargain. He said that he would like her to be present. I spoke with Amy Collum, Assistant District Attorney, the next morning and she made an offer of 40 years. She further stated that she might lower the offer somewhat, but not very much do [sic] to the severity of the crime. I told her that I was going to the jail to meet with my client that afternoon. She stated that she would contact the victim's family again about a possible plea bargain. Dr. Goodness and I went to the Tarrant County Jail to speak with my client. Again, I explained that he did not have a self defense claim because he safely left the scene after he saw that the victim had a gun, returned with a weapon and attacked the victim from behind. I also informed him

7

that we were unable to locate any witnesses who would
testify to the fact that the victim had a gun.  I told
him that none of the statements obtained by the
investigating police agency stated that the victim had
a gun.  Mr. Leggett had informed us that his friend
would state that the victim had a gun, but he did not.
When he would start to become upset, Dr. Goodness was
able to calm him down so that he would listen.  Mr.
Leggett finally agreed that his self defense claim was
no good under the law because he left the area when he
was in danger and snuck up on the victim from behind
and stabbed him.  He was also informed that none of the
witnesses would speak with us, but they were meeting
with the State because we were set for trial in a
couple of weeks.  Mr. Leggett also stated that he
understood that he was the only person saying that the
victim had pulled a gun on him.  I told Mr. Leggett
that if the victim had a gun, his neighbor should have
told the proper authorities since my client claimed to
be helping his neighbor by attacking the victim.  He
further stated that he understood that no one was
corroborating his version of the events and that it
"would be his word against everyone else's".  He agreed
that we needed to reach some sort of plea bargain.  I
also told him that we had a big problem with his prior
criminal record.  If we decided to plea [sic] guilty
and have the Judge or jury assess the punishment, he
would not receive a favorable amount of time due his
criminal record, especially with his sex offense
convictions.  He agreed and stated that he would
probably receive a life sentence because a jury would
not like him due to the sex offenses.  I told him that
the prosecutor had offered 40 years which had been
reduced from the previous 45 year offer.  Mr. Leggett
stated that he wanted less that [sic] 40 years and
instructed me to begin negotiations.  He stated that he
wanted 35 years, but would take anything lower than 40
years.  I informed him that the prosecutor wanted to
bring him to Court the following morning since we were
close to reaching a plea agreement.  He agreed.
Therefore, Dr. Kelly Goodness and I left.  I thanked
Dr. Goodness for being present during the discussion
with Mr. Leggett.  She was very helpful in that she was

able to calm Mr. Leggett down when he became angry.  I
asked her to accompany me to Court the next day to
assist in the event Mr. Leggett become [sic] angry.
Dr. Goodness agreed to appear in Court the following
day.  Dr. Goodness, Investigator Stanley Keeton and
myself were present in Court to discuss a plea bargain.
I asked Mr. Keeton to be present in Court that morning
in the event that Mr. Leggett needed clarification on
what the investigator had done on Mr. Leggett's behalf
or what any of the witnesses had told the investigator.
I met with the Assistant District Attorney, Amy Collum,
and she stated that the lowest offer she could make was
38 years.  Dr. Goodness, Stanley Keeton and myself went
to speak with Mr. Leggett.  I informed him that the
lowest the ADA would offer was 38 years.  Mr. Leggett
had made a list of questions that he had thought of
after we had left from our visit the day before.  We
went through each and every question he had on his list
and answered them all including the possibility of the
victim being a confidential informant for the state.  I
told him that we had not been able to obtain any
information whatsoever in that regard.  He was also
told that IF the victim was an informant, it would not
have any bearing on his case.  I also told him that he
would need to do half of his time (possibly more)
before he would be eligible for parole, but at least he
would have a chance of getting out of prison where he
wouldn't have that chance if a Judge or jury gave him a
higher sentence or a life sentence.  He understood all
of his options and decided that the 38 year offer was
his best option.  He stated that he would accept the 38
year offer from the state.  He went before Judge
Phillip Vick, a visiting Judge.  The Judge went through
all of Mr. Leggett's rights and also asked Dr. Kelly
Goodness if Mr. Leggett was competent and understood
what he was doing.  Mr. Leggett had the opportunity to
stop the plea at any time and the Judge asked him
several times if he had any questions.  Mr. Leggett
stated that he understood the plea agreement and that
he did not want to have a jury trial.  At no time did
Mr. Leggett say anything about not wanting to plea or
was unhappy with my representation in any way.  In
referenced to his complaint about me not filing a

9

Motion for Speedy Trial, I was the second (2nd)
attorney on his case. I had informed Mr. Leggett that
I needed time to properly prepare for trial and to
investigate his case in order for me to discuss trial
strategies with him. I needed to familiarize myself
with his case in order to be able to properly discuss
all of his options and be able to tell him the
information I had obtained so that he could make an
informed decision regarding his case. I told him that
his case was on the Court's trial docket and the Court
was handling the situation properly due to the fact
that I needed additional time to prepare and
investigate his case. He told me that was fine because
he wanted me to do everything I could to help him,
which I did. Mr. Leggett was never told that he would
receive a life sentence if he went to trial. He was
told the punishment range for his type of offense. He
was told that a life sentence was an option for the
jury and his sex offenses would also be considered by
the jury regarding punishment in the event he was found
guilty of the offense in this case. A prosecutor never
spoke directly with Mr. Leggett without counsel
present. Mr. Leggett was never told that he would
receive a life sentence by Dr. Goodness, the
investigator or myself. Mr. Leggett stated that he
would probably receive a life sentence from a jury if
he was found guilty of the murder due to his prior
criminal record. Mr. Leggett voluntarily entered into
the plea agreement before the Judge. He was asked if
his plea was voluntary and he informed the Court that
it was.

Adm. R., Writ WR-79,765-01, 26-29, ECF No. 15-1.

Based on counsel's affidavit and the documentary record, the

state habeas judge found that counsel did not tell petitioner he

would definitely receive a life sentence; petitioner decided to

accept the plea offer; petitioner understood the consequences of

accepting the plea offer; counsel did not coerce or mislead

petitioner into accepting the plea agreement; and counsel's explanation for the trial delay was a matter of reasonable professional judgment. *Id.* at 44-45. Further, the state habeas judge found that before accepting the plea offer the trial court fully admonished petitioner regarding the waiver of his rights and the consequences of his plea; petitioner "signed" that he had read and understood the written plea admonishments given to him by the court, that he was mentally competent, that his plea was knowingly, freely and voluntarily entered, that he had not been coerced, forced or improperly persuaded to enter the plea and that he was satisfied with his counsel's representation; and petitioner told the trial judge that he understood what he was doing in pleading guilty pursuant to the plea bargain agreement. Finally, the state habeas judge found that petitioner signed and entered a judicial confession admitting all the allegations alleged in the indictment; petitioner's guilty plea was freely, knowingly and voluntarily entered; his plea was supported by his judicial confession; petitioner presented no evidence that he would have rationally proceeded to trial; petitioner presented no evidence suggesting that the outcome of his trial would have been different with counsel other than Mr. Hall; and that there exists no reasonable probability that the outcome of his case would have

11

been different with counsel other than Mr. Hall. *Id.* at 45-46.
Based on its findings, the state habeas court concluded that
petitioner's guilty plea was freely and voluntarily entered and
based on proper and adequate advice of counsel. *Id.* at 48. In
turn, the Texas Court of Criminal Appeals denied habeas relief
based on the habeas court's findings.

A federal court will uphold a guilty plea challenged in a
habeas corpus proceeding if the plea was knowing, voluntary, and
intelligent. *See United States v. Washington,* 480 F.3d 309, 315
(5th Cir. 2007). A guilty plea is knowing, voluntary and
intelligent if done with sufficient awareness of the relevant
circumstances and likely consequences surrounding the plea.
*Brady v. United States,* 397 U.S. 742, 748 (1970). Thus, before
a trial court may accept a guilty plea, the court must ensure
that the defendant is competent and advised of the consequences
of his plea and the various constitutional rights that he is
waiving by entering such a plea. *Boykin v. Alabama,* 395 U.S.
238, 243 (1969). When reviewing a record, a court must give a
signed, unambiguous plea agreement great evidentiary weight.
*United States v. Abreo,* 30 F.3d 29, 32 (5th Cir. 1994). If a
challenged guilty plea is knowing, voluntary and intelligent, it
will be upheld on federal habeas review. *James v. Cain,* 56 F.3d

662, 666 (5th Cir. 1995). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979). A defendant's solemn declarations in open court are presumed true, and a defendant generally may not recant sworn testimony made at a plea proceeding. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985).

A review of the state court record demonstrates that petitioner's guilty plea complied with minimum constitutional requirements: it reflected "an affirmative showing that [the plea] was intelligent and voluntary," *Boykin*, 395 U.S. at 242, and it showed that the plea was entered by a defendant "with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748. Nothing in the record suggests that the parties involved used coercion or threats to induce the plea or that the state delayed petitioner's trial "in bad faith." Petitioner's conclusory claims, after the fact, unsupported by any evidence whatsoever, are insufficient to rebut the presumption of regularity of the records and the presumption that his plea was voluntary. *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (providing state court records "are

entitled to a presumption of regularity").  Therefore, petitioner

is not entitled to relief under his second ground.

### *Remaining Claims*

Under his first ground, Petitioner raises a plethora of

ineffective-assistance claims.  They are construed as follows:

Counsel was ineffective by-

    (a)   refusing to file or allowing petitioner to file a
motion to dismiss on speedy-trial grounds;

    (b)   failing to use the defense of self-defense;

    (c)   coercing him to plead guilty to avoid a life
sentence;

    (d)   tampering with evidence;

    (e)   failing to inform the state that the victim shot
at petitioner during an incident eight years
before;

    (f)   failing to investigate whether the victim was a
police informant;

    (g)   lying in his postconviction affidavit;

    (h)   failing to allow petitioner to examine the police
report and video statements of witnesses at the
scene;

    (i)   failing to contact petitioner's son;

    (j)   failing to investigate the validity of his prior
indictment in case number 0275315D;

    (k)   failing to correct the spelling of his name for
the record;

    (l)   failing to verify petitioner's conversation with
Scott Kent in the squad car;

    (m)   failing to include attorney Kathy Lowthorp who was
also appointed;

    (n)   failing to consider a change of venue;

    (o)   failing to notify petitioner of the psychiatric
evaluation scheduled for April 11, 2012; and

    (p)   representing petitioner with a conflict of
interest on the defense of self-defense.

Pet. 3 & Attach. 1-4, ECF Nos. 1 & 1-1.

Under this third ground, petitioner claims the state breached the plea agreement by "altering" the trial court's judgment, via a nunc pro tunc order, to include a deadly weapon finding, which was waived by the state prior to the plea. Pet. 7, ECF No. 1. And, finally, under his fourth ground, petitioner challenges the validity of the indictment in a prior sexual-assault case used for sentence enhancement. *Id*.

Respondent asserts that one or more of petitioner's ineffective-assistance claims under his first ground and his third and fourth grounds are unexhausted and procedurally barred from federal habeas review. Resp't's Answer 6-11. Applicants seeking habeas corpus relief under § 2254 are required to exhaust all claims in state court before requesting federal collateral relief. 28 U.S.C. § 2254(b)(1); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir.1999). The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest court of the state. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-48 (1999); *Fisher*, 169 F.3d at 302; *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir.1982). For purposes of exhaustion, the Texas Court of Criminal Appeals is the highest court in the state. *Richardson v. Procunier*, 762 F.2d 429, 431 (5th Cir. 1985). Thus, a Texas prisoner may

generally satisfy the exhaustion requirement by presenting both the factual and legal substance of his claims to the Texas Court of Criminal Appeals in either a petition for discretionary review or, as in this case, a postconviction habeas corpus proceeding pursuant to article 11.07 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07 (West Supp. 2013); *Anderson v. Johnson,* 338 F.3d 382, 388 n.22 (5th Cir. 2003). The exhaustion requirement is not met if the petitioner presents new legal theories or factual claims in his federal habeas petition. *Anderson v. Harless,* 459 U.S. 4, 6-7 (1982); *Riley v. Cockrell,* 339 F.3d 308, 318 (5th Cir. 2003); *Wilder v. Cockrell,* 274 F.3d 255, 259 (5th Cir. 2001).

A review of petitioner's pleadings in state court and his federal petition and attached memorandum reveals that he raises all of his ineffective-assistance claims, save for (a) and (c), and his third and fourth grounds for the first time in this federal petition. Because the claims raise new factual and/or legal arguments for the first time in this federal proceeding, the claims are unexhausted. 28 U.S.C. § 2254(b). Under the Texas abuse-of-the-writ doctrine, however, petitioner cannot now return to state court for purposes of exhausting the claims. *See* TEX. CODE CRIM. PROC. ANN. art. 11.07, § 4. The abuse-of-the-writ

16

doctrine represents an adequate state procedural bar to federal habeas review. *Nobles v. Johnson,* 127 F.3d 409, 423 (5th Cir. 1997). Therefore, absent a showing of cause and prejudice or a miscarriage of justice, such showing not having been demonstrated by petitioner, his ineffective-assistance claims raised for the first time in this federal proceeding, are procedurally barred from this court's review.[2] *Smith v. Johnson,* 216 F.3d 521, 523-24 (5th Cir. 2000).

By entering a knowing, intelligent and voluntary guilty plea, a defendant waives all nonjurisdictional defects in the proceedings preceding the plea. This includes all claims of ineffective assistance of counsel that do not attack the voluntariness of the plea. *Smith,* 711 F.2d at 682; *Bradbury v. Wainwright,* 658 F.2d 1083, 1087 (5th Cir. 1981). Because petitioner's guilty plea was voluntary and knowing, thereby negating claim (c), (a) is waived. *See Florida v. Nixon,* 543 U.S. 175, 187 (2004); *United States v. Broce,* 488 U.S. 563, 573-74 (1989); *Boykin v. Alabama,* 395 U.S. 238, 243 (1969); *Tollett v. Henderson,* 411 U.S. 258, 267 (1973); *United States v. Scruggs,*

---

[2]Petitioner presents no proof that it was the intent of the parties to waive the affirmative deadly-weapon allegation in the indictment or to agree that such a finding would not be included in the trial court's judgment as part of the plea agreement for purposes of his third ground.

691 F.3d 660, 670 (5th Cir. 2012); *Murray v. Collins,* 981 F.2d

1255, 1992 WL 387015, at *3 (5th Cir. 1992).   Therefore,

petitioner is not entitled to relief under his first, third or

fourth grounds.

     For the reasons discussed herein,

     The court ORDERS that the petition of petitioner for a writ

of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,

denied.   For the reasons discussed herein, the court further

ORDERS that a certificate of appealability be, and is hereby,

denied.

     SIGNED December 11, 2015.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

18